[608 NYS2d 636]

In the Matter of THOMAS ENG, Petitioner, v LEE P. BROWN, as Commissioner of the New York City Police Department, et al., Respondents.

First Department, March 10, 1994

### APPEARANCES OF COUNSEL

*Kenneth E. Gordon* of counsel, New York City *(Steven J. Saltiel* with him on the brief; *Gordon, Gordon & Tepper, P. C.,* attorneys), for petitioner.

*A. Orli Spanier* of counsel *(Stephen J. McGrath* on the brief; *O. Peter Sherwood, Corporation Counsel* of New York City, attorney), for respondents.

### OPINION OF THE COURT

CARRO, J. P.

By order of the Police Commissioner dated August 23, 1991 the petitioner, Thomas Eng, was dismissed from the New

York City Police Department after having been found guilty, after a hearing, of the following four charges (charge 3 having been dismissed):

"1. Said Detective Eng off duty in civilian clothes, on September 23, 1989 at or about 0130 hours, inside of 224 Milton Avenue, Staten Island, a private house, did wrongfully discharge one round from a firearm.

"2. Said Detective Eng off duty in civilian clothes at or about 0250 hours in front of 226 Milton Avenue, Staten Island, did wrongfully and without just cause attempt to cause physical injury to another person known to this department in that he did discharge one round from a shotgun to wit; a Winchester, 12 gauge, serial #L2023553 * * *

"4. Said Detective Eng at the time, date and location indicated in specification #1 having discharged a firearm inside of 224 Milton Avenue, Staten Island, a private house, did fail and neglect to report said discharge.

"5. Said Detective Eng off duty in civilian clothes, September 23, 1989 at or about 0250 hours in front of 226 Milton Avenue, Staten Island did wrongfully engage in a physical altercation with an individual known to this department."

■ Upon reviewing the record in this CPLR article 78 proceeding, we find no substantial evidence to support the Commissioner's finding of guilt as to charge 5, or the central element of charge 2, that Detective Eng "attempt[ed] to cause physical injury to another person" when he discharged one round from his shotgun. In light of all the circumstances, Eng's dismissal from the police department represented a miscarriage of justice which so shocks this Court's sense of fairness that it is our duty to set it aside and remand to the Commissioner for redetermination of the penalty to be imposed (see, Matter of Pell v Board of Educ., 34 NY2d 222, 233).

Eng was appointed a New York City police officer in January 1983. While assigned to the 109th Precinct, Eng voluntarily acted as an informant for the Department's Internal Affairs Division (IAD) in an investigation involving the corruption of another police officer who was subsequently arrested and terminated. Eng was thereafter permanently assigned to IAD, and he was promoted to detective in June 1987. Until the incident that led to the above charges, Eng had not had any disciplinary record, he was rated "above standards" in his most recent performance evaluation, and he held an award for meritorious police duty.

Eng and his wife Maria took up residence at 226 Milton Ave. in Staten Island in early 1987. Their next-door neighbors at 224 Milton Ave., a connected townhouse, were Brian Larkin, also a police officer, and his wife Rita. Larkin's friend John Dono, who lived at 216 Milton Ave. with his wife Christine, had a criminal record including rape, burglary, assaults and hijacking. Eng did not know of Dono's criminal record until after the incidents that took place in the early morning hours of September 23, 1989.

Larkin and Dono frequently taunted Eng about his assignment with the IAD, and his Chinese ancestry, often referring to him as a "rat" or "fucking chink." When Eng was promoted to detective, the Larkins and Donos presented him with a cake that bore the message: "Congratulations Tom. We know your knees hurt." Eng interpreted this as expressing their view that he had earned his promotion either by "performing oral sex or kissing somebody's behind." In the months prior to the September 23, 1989 incident the Engs had ceased socializing with the Larkins and Donos because of the rowdiness of their parties and the continued taunting by Larkin and Dono.

On September 22, 1989, at about 9:15 P.M., Brian Larkin invited the Engs to a party, which was already in progress at Larkin's house, to celebrate Larkin's promotion to detective earlier that day. When the Engs arrived, already present were the Larkins, the Donos, Robert and Philip Caracappa (Christine Dono's brothers) and Dickie Stillwell (Rita Larkin's brother). The entire group, especially the men, were intoxicated when the Engs arrived. Maria Eng went home at around midnight, leaving her husband in the Larkins' kitchen with the remaining guests.

Brian Larkin and John Dono soon began their familiar taunts. Dono in particular declared that Eng had been promoted to detective before Larkin, despite Larkin's seniority in the department, because "rats get promotions by stabbing backs." Dono called Eng a "chink rat," and threatened that he would kill Eng and his entire family if Eng ever stabbed him in the back. Eng replied that in such event he "would do the same and I told him to go fuck himself." Eng got up from his seat at the kitchen table and began walking toward the front door in order to leave. At that point he heard sounds behind him like chairs moving or cabinets opening and closing, and he placed his hand on his holstered gun as he turned to see what was happening. Suddenly Eng was shoved from behind on his back and elbow, he lost his balance, and his gun

accidentally discharged into the floor. As Eng left the house he told Rita Larkin, who was next to a phone, to call 911. He then went to his own house, took off his gun, and returned to the Larkins' residence to await the police. When a police car arrived in response to the 911 call, Rita Larkin left the house and told the responding officers, falsely, that no shot had been fired; rather some kids were making noise in a vacant lot down the block.

Eng, Larkin and Dono began arguing about the implications of reporting the accidental discharge of Eng's gun. Larkin insisted that the incident not be reported because it might cost him his new shield, while Eng responded that if he did not report the incident his own shield would be in jeopardy. The argument escalated in intensity until Philip Caracappa kicked Eng's chair, yelling that he was going to "kick [Eng's] ass" because he was going to turn everyone in and was a "fucking rat." Dono told Caracappa to take the fight outside, whereupon all the men, except Eng, left the house. Rita Larkin told Eng not to leave the house because the others were "waiting for" him. She then telephoned Christine Dono to "come out and get your husband and brothers."

When Eng saw the other men walking away from the Larkins' house, he left and headed for his front door. Larkin, who was standing in Eng's driveway, asked him to approach. Larkin said "if this is gonna go down * * * this is gonna cost me." When Eng replied he was sorry about that, Larkin responded he would make him sorry, and punched Eng in the face, knocking Eng's glasses off. As Eng fell to the ground, Dono yelled "motherfucker!" and kicked him in the forehead. Eng managed to get to his feet and ran toward his house, bleeding from his face, as someone behind him yelled "he's going into the house, get him!" Eng ran upstairs and grabbed a shotgun, already loaded with two or three shells, and ran downstairs while loading several more shells into the gun.

Upon reaching the bottom of the stairs and approaching his screen door, Eng saw Dono in front of the house yelling that he was going to kill him. Dickie Stillwell was standing behind Dono, holding a large rock in his hand as if he was going to throw it. As Eng stepped forward to latch his screen door, Dono lunged for it. Eng yelled "get the fuck out" (although Dono was not in the house), took one step back and raised his shotgun. Dono ducked, and Eng fired over his head, through the screen, and immediately slammed the wooden front door

to his house. Within minutes the police arrived and directed Eng to come out with his hands in the air, which he did.

■ We address first the central and most serious component of charge 2, and whether there is substantial evidence in the record to support the finding of Eng's guilt. In pertinent part, it was charged that Eng "did wrongfully and without just cause attempt to cause physical injury to [John Dono] in that he did discharge one round from a shotgun". Thus the department's theory was that Eng tried to shoot Dono, who was but a few feet away, but missed. Consistent with this theory Eng, immediately upon missing, presumably abandoned his intent to shoot Dono, and instead slammed his front door, since Eng did not pump another round into the chamber and accomplish his alleged purpose. There is simply no substantial evidence to support this improbable scenario; in fact the evidence credited by the Trial Commissioner was directly to the contrary. Eng stated that he fired the shotgun *not* to hit Dono, but as a warning shot, out of fear that Dono was going to enter his house and harm him and possibly his wife:

"Question: Did you fire your shotgun with the intent of striking John Dono?

"Answer: No, the shotgun was raised higher than he is. He is a maximum of 5′4″. I believe I aimed higher than he was and gave him time to duck before I fired.

"Question: Are you implying that this was some sort of warning shot?

"Answer: I just didn't want him to come into the house at that time. I know if he would have gotten into my house there would have been four other drunken people behind him. At that time the only thing between them and my wife was me."

What the Trial Commissioner relied upon to support her finding that Eng tried to shoot Dono was a cleverly phrased hypothetical question posed to Eng upon cross-examination, which in logic and according to the laws of ballistics permitted only an answer that superficially implied guilt, but in fact proved nothing of the sort:

"Question: Isn't it a fair statement that had he not ducked and you fired the shotgun in the direction that you did, that you would have shot him? * * * If he had not ducked, you would have struck him with the shotgun blast because the shotgun was pointed in his direction where he had been standing?

"Answer: That is a possibility."

The central factual question with respect to charge 2 was not whether the laws of ballistics were in operation on that day, i.e., *if* Eng pointed his shotgun at Dono's body, and *if* Dono had not ducked, and *if* Eng had nevertheless pulled the trigger, whether the birdshot would have hit Dono. Of course it would have. Eng's attorney tried to expose the irrelevant nature of the question when he objected to it, and the Trial Commissioner asked upon what grounds the objection was raised:

"Defense counsel: There is nothing to show that if he hadn't ducked—he is saying if he hadn't ducked and you fired you would have hit him. There is nothing to establish that he would have fired had he not ducked.

"Trial Commissioner: I will allow the question.

"Defense counsel: Do you understand my logic? The issue is was he trying to hit John Dono or trying to scare him.

"Trial Commissioner: I understand."

The Trial Commissioner apparently did not understand the significance of the question, the likes of which Franklin D. Roosevelt is reported to have referred to as an "awfully iffy question," because she explicitly relied upon the answer as an admission of Eng's intent to shoot Dono, which it was not: "While the respondent vacillated about whether he intended to cause Dono physical injury, it strains credibility to argue that considering his actions he could have intended anything less. Indeed, the respondent himself admitted, that if Dono had not ducked it is possible that he would have been struck by the blast. * * * In sum, because the respondent acknowledged that he fired the shotgun and could have possibly struck Dono if Dono had not ducked, and this discharge was not justified under the circumstances, I find the respondent guilty as charged."

Since the record does not contain substantial evidence that provides a rational basis for the Commissioner's determination that Eng attempted to cause physical injury to Dono when he fired the shotgun *(Matter of Pell v Board of Educ.,* 34 NY2d, *supra,* at 231), and since the attempt to cause physical injury is central to charge 2, the article 78 petition should be granted to the extent of setting aside the Commissioner's determination of guilty as to charge 2.

▮ Nor do we find substantial evidence to support the finding of guilty as to charge 5, that Eng "did wrongfully engage in a physical altercation with an individual known to

this department." This charge referred to the incident wherein Eng responded to Larkin's call to approach him, Larkin punched Eng in the face, and Dono kicked Eng in the head when he was down. The utter irrationality and arbitrariness of the determination that Eng was guilty of this charge is made more glaring in light of the fact that Larkin, who initiated the attack without justification, was never charged with this offense. (Larkin was charged with, and pleaded guilty to, failing to identify himself to the responding police officers and failing to report the earlier firearm discharge, for which he received a 19-day suspension.) The finding of guilty with respect to charge 5 should accordingly be vacated.

■ Although the Trial Commissioner found that the discharge of Eng's firearm in Larkin's house was accidental, she concluded that he was not justified in placing his hand on his gun as a threshold matter, and thus he "wrongfully" discharged his weapon. Despite the mitigating circumstances, we find that there was sufficient evidence to support the finding of guilty as to charge 1. As to charge 4, Eng acknowledged that police regulations required that he, personally, report the accidental discharge of his firearm. His direction to Rita Larkin to call 911 did not satisfy his duty. Despite the mitigating circumstance that Rita Larkin did report the incident, and that it was she who misled the responding police in order to protect her husband, the finding of guilty on this specification is supported by substantial evidence and must be sustained.

In sum, the CPLR article 78 petition seeking to set aside the August 23, 1991 order of the Police Commissioner should be granted to the extent of setting aside the finding of guilty with respect to charges 2 and 5, the finding as to charges 1 and 4 should be confirmed, and the matter should be remitted to the Police Commissioner for redetermination of the penalty to be imposed, without costs.

ELLERIN, ASCH and NARDELLI, JJ., concur.

Petition seeking to set aside a determination of respondent Police Commissioner dated August 23, 1991 (transferred to this Court by order of the Supreme Court, New York County, entered April 9, 1992), granted, without costs, to the extent of setting aside the finding of guilty with respect to charges 2 and 5, confirming the finding as to charges 1 and 4, and remitting the matter to the Police Commissioner for redetermination of the penalty to be imposed.