**Thomas ENG, Plaintiff,**

v.

**The NEW YORK CITY POLICE DEPARTMENT, William J. Bratton, as Commissioner of the New York City Police Department, and The City of New York, Defendants.**

**No. 95 Civ. 5845(JSR).**

United States District Court,
S.D. New York.

Oct. 6, 1997.

---

Steven J. Saltiel, Gordon & Gordon, P.C., New York City, for Plaintiff.

Corporation Counsel of the City of New York (Paul Aronson, of counsel), for Defendants.

*MEMORANDUM ORDER*

RAKOFF, District Judge.

Defendants have moved for summary judgment on all claims. Plaintiff, for his part, has cross-moved with respect to his claim that defendants violated his right to procedural due process. For the reasons that follow, the Court hereby grants summary judgment to defendants except as to the due process claim, as to which the Court denies both parties' respective motions.

The following facts, taken most favorably to plaintiff except as to the due process claim (where they are alternately considered most favorably to plaintiff and most favorably to defendants), are pertinent to these determinations. Plaintiff Thomas Eng is Chinese–American. He became a New York City Police Officer in 1983 and was promoted to the position of detective in the Internal Affairs Division ("IAD") in 1987.

On September 29, 1989, Eng attended a party at the home of his neighbor and fellow police officer, Brian Larkin, to celebrate Larkin's recent promotion to detective. At the party, Larkin and several of his friends began to heap obscene ridicule on Eng regarding both his Chinese ancestry and his membership in the IAD. In response, plaintiff got up to leave, but, while exiting, heard sounds behind him, at which point he placed his hand on his holstered off-duty gun. As plaintiff turned to see what was happening, he was pushed from behind and lost his balance. The gun accidentally discharged.

Plaintiff left the party but was followed by the other men, who caught him and assaulted him. Eventually, plaintiff reached his house, retrieved a shotgun, and fired a warning shot through the front screen door to deter the other men from entering his home.

Following the incident, plaintiff was charged by the Police Department with five counts of conduct unbecoming an officer, specifically: (1) wrongful discharge of a firearm in Larkin's home; (2) wrongful attempt to cause physical injury to another by firing his shotgun through the screen door; (3) wrongful alteration of the shotgun after discharging it; (4) failure to report the discharge of the shotgun to the police; and (5) wrongful engagement in a physical altercation with officers of the department. Between February 27 and March 1, 1991, an Assistant Deputy Commissioner of Trials for the Police Department conducted a hearing on these charges. On August 9, 1991, the Assistant

Deputy Commissioner found plaintiff guilty of charges 1, 2, 4, and 5, and recommended dismissal from the Police Department. On August 23, 1991, Police Commissioner Lee Brown approved that recommendation and the dismissal of plaintiff became final.

On December 17, 1991, plaintiff commenced an Article 78 proceeding in New York state court, challenging his dismissal on the ground that it was "arbitrary, capricious, an abuse of discretion, irrational, made in violation of lawful procedure, and ... in violation of the Due Process and Equal Protection clauses of the United States and New York Constitutions, 42 U.S.C. § 1983, Civil Service Law § 75...." *See* Def. Notice of Motion Exh. S, at ¶¶ 19, 21 (12/17/91 Verified Petition). On March 10, 1994, the New York Appellate Division, First Department, affirmed the underlying findings as to charges 1 and 4, but reversed the findings as to charges 2 and 5 for lack of substantial evidence. The Appellate Division further concluded that, under all the circumstances, plaintiff's dismissal was a "miscarriage of justice" that "shock[ed] the Court's sense of fairness." As a result, the Court set aside plaintiff's dismissal for "remand to the Commissioner for redetermination of [a new] penalty to be imposed." *Eng v. Brown*, 196 A.D.2d 89, 608 N.Y.S.2d 636 (1st Dep't 1994). Plaintiff's appeal of the Appellate Division's findings was denied by the New York Court of Appeals on June 16, 1994. *Eng v. Brown*, 83 N.Y.2d 758, 615 N.Y.S.2d 875, 639 N.E.2d 416 (1994).

In accordance with the Appellate Division's remand, Police Commissioner William Bratton issued a redetermined penalty on October 7, 1994, forfeiting Eng's pay since the day of the incident and placing him on "probation" pending the results of a psychological evaluation to determine whether he could resume full active status. Def. Exh. AA (10/7/94 Bratton Memorandum Redetermining Penalties). Eng was then examined by Police Department Staff Psychologist Dr. Dayle Schwartzler on November 15, 1994, November 23, 1994, and December 27, 1994. Based on these examinations, Dr. Schwartzler concluded, in a Memorandum dated February 28, 1995, that plaintiff was psychologically unsuitable for police work. On April 12, 1995, Michael A. Markman, Chief of Personnel for the Police Department, issued a memorandum on behalf of the Police Commissioner terminating plaintiff on the basis of the psychological evaluation. Def. Notice of Motion Exh. EE (4/12/95 Markman Letter).

Previously, after *Commissioner Bratton* had issued the redetermined penalty but before the psychological evaluation was implemented and plaintiff terminated, plaintiff had brought a second Article 78 proceeding to challenge the redetermined penalty. In that Article 78 petition, plaintiff had once again alleged that defendants abused their discretion and discriminated against him in violation of the United States and New York Constitutions, 42 U.S.C. § 1983 and N.Y. Civil Service Law § 75. *See* Def. Notice of Motion Exh. BB, at ¶¶ 27, 29, 31 (2/2/95 Verified Petition). But because plaintiff's dismissal for psychological unsuitability occurred after plaintiff had commenced his second Article 78 proceeding, his Petition did not include any claim regarding dismissal. Upon being dismissed, however, plaintiff included in his next filing of papers in the Article 78 proceeding (which was a Reply Brief in support of his second Article 78 petition) a claim that this dismissal violated his right to procedural due process. *See* Def. Notice of Motion Exh. GG, at 7–10 (5/15/95 Reply Mem.).

As a result, when, on August 30, 1995, New York Supreme Court Justice Jane Solomon issued an Interim Decision upholding the Commissioner's redetermined penalty in all respects, she requested additional briefing with respect to plaintiff's new due process claim relating to his dismissal and scheduled a hearing for further oral argument. In response, however, plaintiff informed Justice Solomon that the instant federal action had been filed on July 28, 1995 raising, *inter alia*, the due process claim. *See* Def. Notice of Motion Exh. II (9/6/95 Saltiel Letter to Justice Solomon). As a result, Justice Solomon issued a Final Decision and Judgment, dated September 12, 1995, that was identical to her August 30th Interim Decision except for the omission of any reference to plaintiff's due process claim.

Plaintiff also appealed that judgment, and, on February 6, 1997, the Appellate Division affirmed Justice Solomon's rulings in substantially all respects. *Eng v. Bratton,* 653 N.Y.S.2d 333, —— A.D.2d —— (1st Dep't 1997). Among other things, the Appellate Division stated that "[t]he redetermined penalty conditioning [Eng]'s *reinstatement* on the result of a psychological evaluation was within [the police department]'s discretion." *Id.* (emphasis supplied). Thereafter, both parties cross-moved for reargument and/or leave to appeal to the New York Court of Appeals. On May 13, 1997, the Appellate Division denied plaintiff's motion for reargument except for modifying the above-quoted sentence to read as follows: "The redetermined penalty conditioning petitioner's *restoration to duty* on the result of a psychological evaluation was within [the police department]'s discretion." *See* Saltiel Aff. Exh. G (5/13/97 Decision) (emphasis supplied). The parties' reargument papers evidence that the purpose of this change was to reflect that plaintiff, having previously been reinstated by virtue of the Appellate Division's order of March 10, 1994, had not been terminated at the time the Commissioner entered the redetermined penalty on October 7, 1994 but simply suspended from active duty.

■ Alleging that the instant action is premised upon the same conduct and events that formed the basis of Eng's claims in the prior state court proceedings, defendants seek summary judgment here on the grounds of collateral estoppel and *res judicata.* The latter doctrine is clearly not a bar, since the relief of damages available to plaintiff in this proceeding was unavailable to him in the prior Article 78 proceedings. *See Davidson v. Capuano,* 792 F.2d 275 (2d Cir.1986); *see also Taylor v. Brentwood Union Free Sch. Dist.,* 908 F.Supp. 1165, 1178 (E.D.N.Y.1995). As to collateral estoppel, however, the record is clear that the essential issues underlying all of plaintiff's instant claims except his claim of denial of procedural due process in relation to his ultimate dismissal were all fully litigated and resolved against him in the prior proceedings. *See Eng v. Bratton,* Index No. 102981/95, at 7–8 (Sept. 12, 1995 N.Y. Supreme Court Decision & Judgment)

(Solomon, J.), *aff'd, Eng v. Bratton,* 653 N.Y.S.2d 333 (1st Dep't 1997). *See also, e.g.,* Def. Notice of Motion Exh. BB, at ¶¶ 27, 29, 31 (2/2/95 Verified Petition); *id.* Exh. CC, at 22–23 (3/31/95 Memorandum in Support of Article 78 Petition); *id.* Exh. GG, at 7–11 (5/15/95 Reply Memorandum in Support of Article 78 Petition); *id.* Exh. KK, at 23–26 (11/15/95 Memorandum Appealing Decision of Supreme Court); *id.* Exh. LL, at 10–13 (12/12/96 Reply Memorandum Appealing Decision of Supreme Court). Accordingly, plaintiff is collaterally estopped from further relitigating these issues here. *See Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir.1985) (per curiam). From the foregoing account, however, it is equally clear that the procedural due process claim relating to plaintiff's ultimate dismissal has not been litigated in any material respect, and the doctrine of collateral estoppel thus will not bar plaintiff from raising it here.

■ Defendants nevertheless contend that plaintiff's procedural due process claim must be dismissed since plaintiff no longer had a constitutionally protected property interest in his position once Commissioner Bratton placed him on "probation." *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972) (property right in continued employment required to sustain procedural due process claim). While a beginning employee who is initially hired on a probationary basis has no property right in his employment, *see Castro v. N.Y.C. Bd. of Educ.,* 777 F.Supp. 1113, 1117 (S.D.N.Y. 1990), Eng was not a "probationary" employee in that sense. He had held a fully tenured position as a police officer and was legally entitled to full reinstatement to that position once his initial dismissal was overturned in the first Article 78 proceeding. The fact that plaintiff was placed on "probation" in the sense of being suspended from active duty pending a psychological evaluation does not alter the fact of his reinstatement as a police officer and his entitlement to due process. *See Acevedo v. Brown,* 195 A.D.2d 164, 606 N.Y.S.2d 691 (1st Dep't 1994). Indeed, so as to leave no misimpression as to plaintiff's employment status under the redetermined

penalty, the Appellate Division specifically amended the language in its order affirming the redetermined penalty to make clear that plaintiff's psychological evaluation was a condition, not to his "reinstatement" as a police officer, but simply to his "restoration to [active] duty." *See* Saltiel Aff. Exh. G (5/13/97 Decision); *see also* 8/13/97 Saltiel Letter & Exhs (plaintiff's submissions to Appellate Division urging clarification of the Order's language). Accordingly, at the time of his post-evaluation dismissal, plaintiff had a constitutionally protected property right in his position with the Department and was entitled to at least minimal procedural due process prior to dismissal. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985).

■ Whether the requirements of *Loudermill* were met here is unclear, however, for genuine factual disputes exist as to what and how much notice plaintiff was given of his post-evaluation dismissal and how much opportunity, if any, he was given to be heard. *See, e.g.,* Eng Aff. ¶¶ 8–12; Def. Exhs. AA, DD, & EE. Given these factual disputes, reasonable jurors could certainly differ as to whether defendants provided due process under the circumstances. *See generally Todaro v. Norat,* 112 F.3d 598, 599 (2d Cir.1997); *Catone v. Spielmann,* 966 F.Supp. 1288, 1297 (N.D.N.Y.1997).

For the foregoing reasons, the Court grants defendants' motion for summary judgment as to all claims except plaintiff's procedural due process claim, for which summary judgment is denied. Plaintiff's motion for summary judgment on this claim is likewise denied. The parties are further directed to telephone Chambers jointly on October 15, 1997 at 5:30 p.m. to schedule a firm trial date for this remaining claim.

SO ORDERED.