**Debra SORANO, Plaintiff,**

v.

**Robert TAGGART, and City of Yonkers, New York, Defendants.**

**No. 07 Civ. 11254 (WGY).**

United States District Court, D. Massachusetts.

July 29, 2009.

Jonathan Lovett, Drita Nicaj, Lovett & Bellantoni, LLP, Hawthorne, NY, for Plaintiff.

Rory Carleton McCormick, Corporation Counsel, City of Yonkers, Yonkers, NY, for Defendants.

## MEMORANDUM & ORDER

WILLIAM G. YOUNG, District Judge.[1]

### I. INTRODUCTION

The plaintiff Debra Sorano ("Sorano") brings this action against the defendant Robert Taggart ("Taggart")—in his individual capacity—and the defendant City of Yonkers, New York (the "City") alleging a violation of 42 U.S.C. § 1983. *See* Plaintiff's Complaint ("Pl.'s Compl.") ¶ 9 [Doc. No. 1]. Taggart terminated Sorano, a police officer for the City, without the benefit of a pre-termination hearing. *See* Plaintiff's Statement of Undisputed Facts ("Pl.'s Statement") ¶¶ 1–3 [Doc. No. 21]; Defendant's Statement of Undisputed Facts ("Def.'s Statement") ¶¶ 1–2 [Doc. No. 14]. This, Sorano alleges, violated her right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution. *See* Pl.'s Compl. ¶ 1.

In defense of Sorano's claim, Taggart and the City (collectively, the "defendants") claim that Sorano is barred by the doctrine of collateral estoppel from relitigating this issue since it was already adjudicated in a prior Article 78 proceeding. *See* Defendant's Memorandum of Law in Support of Motion for Summary Judgment

---

1. Of the District of Massachusetts, sitting by designation.

("Def.'s Mem.") at 4–8 [Doc. No. 15]. Alternatively, the defendants allege that even if Sorano is not collaterally estopped from litigating this issue, Taggart is still entitled to qualified immunity. *See id.* at 8–9. Since this action was filed under 42 U.S.C. § 1983, this Court may exercise subject-matter jurisdiction over it pursuant to 28 U.S.C. § 1343(a)(3).[2]

## A. Facts

In 1992, the City hired Sorano to work as a police officer. Def.'s Statement ¶ 1; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Pl.'s Resp.") ¶ 1 [Doc. No. 22]. After being out of work on paid administrative leave for three consecutive years, the City's Internal Affairs Division (the "Division") conducted an investigation into Sorano's domicile. Def.'s Statement ¶ 2; Pl.'s Resp. ¶ 2. With the assistance of the Maryland State Police, the Division concluded that Sorano had changed her domicile from New York to Maryland in violation of Public Officers Law § 30(1)(d). *Id.* As a result, on August 2, 2005, Taggart drafted a memorandum terminating Sorano's employment—the stated grounds being her relocation from New York to Maryland. Def.'s Statement ¶ 1; Pl.'s Resp. ¶ 1. At no time prior to Sorano's termination did the defendants conduct a hearing on the matter. Def.'s Statement ¶ 2; Pl.'s Resp. ¶ 2.

On December 2, 2005, after being discharged, Sorano filed an Article 78 petition against the defendants challenging their decision to terminate her employment.

*See* Def.'s Statement ¶ 3; Pl.'s Resp. ¶ 3. As grounds for her petition, Sorano asserted that termination of her employment without the benefit a pre-termination hearing violated her right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution. Def.'s Statement ¶ 4; Pl.'s Resp. ¶ 4. County Court Judge Rory J. Bellantoni granted Sorano's petition, holding that Sorano "should [have] been afforded a due process hearing to determine whether the evidence was sufficient to demonstrate she ceased to be an inhabitant of New York State." Def.'s Statement ¶ 5; Pl.'s Resp. ¶ 5. As such, Judge Bellantoni ordered that Sorano be reinstated to her position as a police officer and that she be paid retroactively back to the date of her termination. *Id.*

The defendants appealed Judge Bellantoni's decision to the Appellate Division of the New York Supreme Court. Def.'s Statement ¶ 6; Pl.'s Resp. ¶ 6. On February 27, 2007, the Appellate Division affirmed Judge Bellantoni's order. *See id.* The court explained that New York Civil Service law did not entitle Sorano to a pre-termination hearing, but that the lack of a pre-termination hearing deprived Sorano of her right to due process of law.[3] *See id.* The court noted, however, that the decision was "without prejudice to the [defendants'] right to seek the termination of [Sorano's] employment as a police officer . . . after giving [Sorano] pretermination notice of and an opportunity to respond to the allegation that she . . . changed her

---

**2.** Section 1343(a)(3) provides that "[t]he district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal

rights of citizens or of all persons within the jurisdiction of the United States[.]" 28 U.S.C. § 1343(a)(3).

**3.** In its decision, the Appellate Division stated that "[s]ince neither notice of nor an opportunity to respond to the allegation was given to [Sorano], due process was not satisfied." Def.'s Statement ¶ 6; Pl.'s Resp. ¶ 6.

domicile from the State of New York to the State of Maryland." Pl.'s Resp. ¶ 6. After the conclusion of Sorano's Article 78 proceeding, she filed this action against the defendants under 42 U.S.C. § 1983. *See* Pl.'s Compl. ¶ 9.

## II. ANALYSIS

### A. Federal Standard: Motion for Summary Judgment

Summary judgment must be granted where the district court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of establishing the non-existence of a "genuine issue." *Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting).

The burden shouldered by the party moving for summary judgment has two components: (1) a burden of production;[4] and (2) an ultimate burden of persuasion.[5] *Id.* The district court "need not decide whether the moving party has satisfied its ultimate burden of persuasion unless and until [it] finds that the moving party has discharged its initial burden of production." *Id.* at 330–31, 106 S.Ct. 2548 (footnote omitted).

Where the moving party bears the burden of persuasion at trial, that party may discharge its burden of production by "support[ing] its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331, 106 S.Ct. 2548. Such a showing will shift the burden of production

to the non-moving party and will require it to either request additional time for discovery, or submit affirmative evidence that raises a genuine issue of material fact for trial. *Id.*

Where the non-moving party bears the burden of persuasion at trial, the party moving for summary judgment can discharge its burden of production in either of the following two ways: (1) it may submit affirmative evidence which negates an essential element of the non-moving party's claim; or (2) it may demonstrate to the district court that the non-moving party's evidence is insufficient to establish an essential element of its claim. *Id.* If the moving party opts to use this latter method, a bald assertion that the non-moving party has no evidence is insufficient to discharge the moving party's burden of production. *Id.* at 332, 106 S.Ct. 2548. Essentially, to employ this latter method the moving party is required to "affirmatively demonstrate that there is no evidence in the record to support a judgment" in favor of the non-moving party. *Id.*

If the moving party fails to satisfy its initial burden of production then its motion for summary judgment must be denied. *Id.* If, however, the district court determines that the moving party has satisfied its burden of production, then the burden shifts to the non-moving party, "who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial . . . or (3) submit an affidavit explaining why further discovery is necessary . . . ." *Id.* at 333 n. 3, 106 S.Ct. 2548. If, after the non-

---

4. The burden of production shifts to the non-moving party once it has been satisfied by the moving party. *Celotex,* 477 U.S. at 330, 106 S.Ct. 2548 (Brennan, J., dissenting).

5. The ultimate burden of persuasion always remains with the party moving for summary judgment. *Celotex,* 477 U.S. at 330, 106 S.Ct. 2548 (Brennan, J., dissenting).

moving party responds, the district court determines that the moving party has satisfied its ultimate burden of persuasion "that there is no genuine issue of material fact for trial[,]" summary judgment must be granted.[6] *Id.*

## B. The Cross–Motions for Summary Judgment

The parties in this case have filed cross-motions for summary judgment. *See* Defendant's Motion for Summary Judgment ("Def.'s Mot. Summ. J.") [Doc. No. 13]; Plaintiff's Motion for Summary Judgment ("Pl.'s Mot. Summ. J.") [Doc. No. 19]. The Court first addresses their varying views of *res judicata* and collateral estoppel.

### 1. The Defendants' Motion for Summary Judgment—*Res Judicata* & Collateral Estoppel

In their briefs, the defendants moved for summary judgment on the ground that Sorano's claim was barred by the doctrine of collateral estoppel. *See* Def.'s Mem. at 4–8. Sorano responded, however, by arguing that the doctrine of *res judicata* did not bar her claim. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n") at 4–7 [Doc. No. 23]. Since the parties have submitted briefs addressing both preclusion doctrines, this Court will focus on each of them separately.

#### a. *Res Judicata*

■ "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S.

75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Thus, this Court is required to apply the doctrine of *res judicata* as it would be applied by the courts of New York State. *See id.*

■ Under New York law, there are four elements to the doctrine of *res judicata:* (1) there must be a final judgment; (2) the judgment must have been "on the merits"; (3) the parties in the second action must be the same as those in the first; and (4) the claims must be the same in the first and second actions. *See In re Hunter,* 4 N.Y.3d 260, 269, 794 N.Y.S.2d 286, 827 N.E.2d 269 (2005) ("Under the doctrine of *res judicata,* a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter.").

■ In New York, two claims are considered to be the "same" if the second claim arises from the same transaction or series of transactions as the first claim—even if the subsequent claim is based upon a different legal theory or seeks a different remedy. *See O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981). New York law further provides, however, that a "plaintiff is not barred from seeking damages, in federal court, on civil rights claims by reason of a prior judgment in an Article 78 proceeding requesting injunctive or affirmative relief. The reason is that … an Article 78 proceeding … cannot give the damages relief demanded in a civil rights suit …." [7] *Davis v. Halpern,* 813 F.2d 37, 39 (2d Cir.1987).

---

**6.** Essentially, summary judgment is appropriate where no reasonable jury "could find by a preponderance of the evidence" in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**7.** Essentially, under New York law, the doctrine of *res judicata* has no application where the initial forum did not have the authority to award the full measure of relief sought in the subsequent litigation. *See Giakoumelos v. Coughlin,* 88 F.3d 56, 61 (2d Cir.1996).

In *McBride v. Bratton,* the plaintiff was employed as a police officer by New York City. No. 96–9602, 1997 WL 383521, at *1 (2d Cir. July 9, 1997). As part of a random drug-test, the plaintiff tested positive for cocaine use in violation of department policy. *Id.* As such, after a hearing on the matter, the plaintiff's employment was terminated. *Id.*

After being discharged, the plaintiff sought reinstatement by filing an Article 78 petition against the police commissioner, the police department, and the City of New York. *See id.* The Court dismissed the petition, however, holding that there was sufficient evidence to conclude that the plaintiff ingested cocaine in violation of department policy. *See id.*

After dismissal of his Article 78 petition, the plaintiff filed a claim under 42 U.S.C. § 1983 in federal court against the same defendants seeking monetary relief. *Id.* In holding that the plaintiff's claim was not barred by the doctrine of *res judicata,* the Second Circuit stated that the plaintiff "could not have litigated his claim for actual damages in the Article 78 proceeding ...." *Id.* at *2. Thus, the Second Circuit concluded that the plaintiff "should not be precluded under *res judicata* from seeking relief under a § 1983 federal action." *Id.*

■ The present case is factually indistinguishable from *McBride.* As was the plaintiff in *McBride,* Sorano is a police officer in New York State. *See* Def.'s Statement ¶ 1; Pl.'s Resp. ¶ 1. Additionally, Sorano's employment was terminated and she subsequently filed an Article 78 petition seeking only reinstatement. *See* Def.'s Statement ¶¶ 1, 3; Pl.'s Resp. ¶¶ 1, 3. Since Sorano could not have sought actual damages from the defendants in her

Article 78 petition,[8] she should not be precluded under the doctrine of *res judicata* from seeking monetary damages from the defendants in this Section 1983 federal action. *See McBride,* 1997 WL 383521, at *2.

Accordingly, the defendants' motion for summary judgment on the ground that Sorano's claim is barred by the doctrine of *res judicata* is DENIED.

### b. Collateral Estoppel

■ "The doctrine of collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and *decided against that party* ...." *Ryan v. New York Telephone Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984) (emphasis added).

The defendants contend that the doctrine of collateral estoppel precludes Sorano from relitigating the issues before this Court since they were already litigated and decided in a prior Article 78 proceeding. *See* Def.'s Mem. at 4–8. Sorano correctly asserts, however, that the defendants have "misconstrue[d] collateral estoppel with *res judicata.*" Pl.'s Opp'n at 4.

To support their position, the defendants rely on *Parker v. Blauvelt Volunteer Fire Co.,* 93 N.Y.2d 343, 690 N.Y.S.2d 478, 712 N.E.2d 647 (1999). The defendants reliance on this case, however, is misplaced. In *Parker,* the plaintiff was a volunteer firefighter who was terminated after an altercation with a superior officer. *Id.* at 346, 690 N.Y.S.2d 478. After the incident, the defendants conducted a hearing during which the Town Board found the plaintiff responsible for the altercation. *Id.* As a result of the Town Board's findings, the

---

**8.** In *Davidson v. Capuano,* the Second Circuit noted that an Article 78 court does not have the authority to award damages for civil rights violations. *See* 792 F.2d 275, 279 (2d Cir.1986).

plaintiff was dismissed from the fire department. *Id.*

The plaintiff thereafter initiated an Article 78 proceeding seeking reinstatement. *Id.* He argued that the evidence presented to the Town Board was insufficient to hold him responsible for the altercation, and thus, his Due Process rights were violated. *Id.* The Appellate Division of the New York Supreme Court disagreed with the plaintiff's contentions, however, and affirmed the ruling of the Town Board. *Id.* at 347, 690 N.Y.S.2d 478.

The plaintiff subsequently brought action against the same defendants in the New York Supreme Court under 42 U.S.C. § 1983 seeking monetary damages based upon the same facts as were litigated in the Article 78 proceeding. *Id.* In holding that the plaintiff was barred by the doctrine of collateral estoppel from relitigating those issues before the Article 78 court, the Court of Appeals stated that the "plaintiff should not be allowed ... to raise any of the issues he *unsuccessfully* litigated in his prior ... [A]rticle 78 proceeding." *Id.* at 349, 690 N.Y.S.2d 478 (emphasis added).

Unlike the plaintiff in *Parker*, Sorano was not unsuccessful in her prior Article 78 proceeding. *See* Def.'s Statement ¶ 6; Pl.'s Resp. ¶ 6. To the contrary, Sorano prevailed in her Article 78 proceeding against the defendants, and the decision was ultimately affirmed by the Appellate Division of the New York Supreme Court. *See id.* Indeed, the Appellate Division held that "since neither notice of nor an opportunity to respond to the allegation was given to [Sorano], due process was not satisfied." Def.'s Mem. at 5–6.

As the foregoing discussion reveals, the defendants' reliance on the doctrine of collateral estoppel misunderstands the effect of the invocation of that doctrine. If anything, by invoking the doctrine of collateral

estoppel the defendants have only hurt their position. The defendants correctly assert that the doctrine of collateral estoppel precludes Sorano from relitigating the issues raised in the Article 78 proceeding. *See Parker*, 93 N.Y.2d at 349, 690 N.Y.S.2d 478. Likewise, however, the doctrine also precludes the defendants from relitigating those issues—functionally barring them from arguing in the present case that they did not deprive Sorano of her Due Process rights. *See id.*

Accordingly, since the defendants' reliance on the doctrine of collateral estoppel is misplaced, its motion for summary judgment is DENIED.

### 2. Sorano's Motion for Summary Judgment

#### a. Offensive Collateral Estoppel— In General

■ "Collateral estoppel ... is a corollary to the doctrine of *res judicata.*" *Lewis v. City of New York*, 17 Misc.3d 537, 844 N.Y.S.2d 650, 655 (N.Y.Sup.Ct.2007). Essentially, the doctrine of collateral estoppel only applies if the following four elements have been satisfied: (1) the issues in both proceedings are identical; (2) the issue in the first proceeding was actually decided; (3) the issue decided in the first proceeding was necessary to support a valid and final judgment on the merits; and (4) the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue in the first proceeding. *See NLRB v. Thalbo Corp.*, 171 F.3d 102, 109 (2d Cir.1999).

■ In the defendants' own brief, they expressly state that "the issue of [Sorano's] due process constitutional violations are identical between her Section 1983 claim and the prior Article 78 proceeding ...." Def.'s Mem. at 4. Additionally, the defendants contend that this identical issue

was "necessarily decided in the prior Article 78 proceeding" and that it "resulted in a final judgment . . . ." *Id.* at 4, 5. These admissions from the defendants are sufficient to establish the first three elements of the doctrine of collateral estoppel. Therefore, as long as the defendants had a full and fair opportunity to litigate this issue in the Article 78 proceeding, they are collaterally estopped from relitigating it in the present case.

### b. Whether the Defendants Had a Full and Fair Opportunity to Litigate the Issue in the Article 78 Proceeding?

To determine whether the defendants were afforded a full and fair opportunity to litigate the issue potentially precluded by collateral estoppel, this Court must conduct a multi-factor analysis. Thus, this Court must consider: (1) the nature of the forum and the importance of the claim in the prior litigation; (2) the incentive and initiative to litigate and the actual extent of the litigation; (3) the competence and expertise of counsel; (4) the availability of new evidence; (5) the differences in the applicable law; and (6) the foreseeability of future litigation. *See Ryan*, 62 N.Y.2d at 501, 478 N.Y.S.2d 823.

Upon the record before this Court, the defendants had a full and fair opportunity to litigate this issue in the Article 78 proceeding. First, the defendants appeared and defended their position when Sorano initially filed the Article 78 petition in the New York Supreme Court. *See* Def.'s Statement ¶ 3. Additionally, after Judge Bellantoni ruled in favor of Sorano, the defendants appealed the decision to the Appellate Division and continued litigation in that court. *See id.* ¶¶ 5, 6. The defendants can hardly argue that they did not fully litigate this matter in the New York

state courts. To the contrary, it appears that they litigated this matter with zeal.

Furthermore, there is no question but that the defendants, at all times relevant to this case as well as the prior Article 78 proceeding, have been represented by legal counsel. "As a practical matter . . . it would be strange indeed for a court to . . . deny preclusive effect when the prior proceeding included a full hearing on the merits at which [a] defendant was represented by counsel." *Ward v. Harte*, 794 F.Supp. 109, 117 (S.D.N.Y.1992). Therefore, since the defendants fully litigated the issue at hand in the New York state courts, and because they were at all times represented by counsel in both proceedings, it is clear that they have been afforded a full and fair opportunity to litigate this matter. As such, the defendants are collaterally estopped from arguing that they did not violate Sorano's Due Process rights.

### c. Mootness

The defendants have two more arrows left in their quiver. At the oral hearing on the cross-motions, the defendants' counsel argued that, because Sorano has now been reinstated and paid back pay, there is nothing left to adjudicate here. While Sorano's counsel conceded this was true, he argued that she continues litigation in this Court to recover emotional damages—an aspect of recovery potentially available under Section 1983 although not available under Article 78. Sorano's counsel is correct. Litigation under a more restrictive statute does not foreclose the more capacious remedies under Section 1983. *See Fitzgerald v. Barnstable Sch. Comm.*, —— U.S. ——, 129 S.Ct. 788, 796, 172 L.Ed.2d 582 (2009) (holding that litigation under the more restrictive statute of Title IX did not preclude litigation under Section 1983).

#### d. Qualified Immunity—Waiver

 Finally, Taggart argues that he is qualifiedly immune from liability in this action. "Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Stephenson v. Doe*, 332 F.3d 68, 76 (2d Cir.2003) (internal quotations & citation omitted). Thus, as an affirmative defense, the defense of qualified immunity may be waived "either by failure to raise it in a timely fashion or by failure to raise it with sufficient particularity." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir.1997).

 Here, the parties are bound by a "Civil Case Discovery Plan." *See* Defendants' Reply to Plaintiff's Opposition to Motion for Summary Judgment ("Def.'s Reply") at 5 [Doc. No. 25]. This plan required that any motion for summary judgment on the basis of qualified immunity be filed prior to discovery. *See* Pl.'s Opp'n at 7–8. It further stated that "[f]ailure to comply with this provision of th[e] Order shall operate as a waiver of the opportunity to resolve the issue of qualified immunity by motion prior to trial." Civil Case Discovery Plan ("Discovery Plan") at 1–2 [Doc. No. 24].

Sorano asserts, and the defendants concede, that no motion for summary judgment on the ground of qualified immunity was filed at the outset of the proceedings prior to discovery. *See* Pl.'s Opp'n at 7; Def.'s Reply at 5. Therefore, it is beyond dispute that the defendants have waived the right to resolve the issue of qualified immunity by motion prior to trial. The defendants, however, urge this Court to exercise its discretion to reach the merits of the defense "in the interests of justice." Def.'s Reply at 5.

 Though the Second Circuit has not expressly determined whether a district court may excuse a waiver of qualified immunity, other district courts have been willing to excuse such a waiver where the plaintiff fails to show that he or she would suffer any "significant prejudice" from the defendant raising it for the first time at the summary judgment stage. *See, e.g., Rinaldi v. City of New York*, 756 F.Supp. 111, 115 n. 3 (S.D.N.Y.1990) (defendants permitted to raise qualified immunity at summary judgment stage despite failure to plead it in their answer because plaintiff failed to show that he would suffer any "significant prejudice"); *Anthony v. City of New York*, No. 00 Civ. 4688(DLC), 2001 WL 741743, at *7 (S.D.N.Y. July 2, 2001) ("Defendants who do not assert qualified immunity in their answer can still raise qualified immunity ... at summary judgment ... if plaintiffs cannot show that any significant prejudice to them will result.") (internal quotation omitted). The Court finds these authorities persuasive. Thus, the Court will excuse the defendants waiver of qualified immunity and reach the merits of the defense unless doing so would cause Sorano to suffer "significant prejudice."

Neither of Sorano's briefs provide any reason why she would be significantly prejudiced by this Court's decision to reach the merits of the defendants' qualified immunity defense. Indeed, even if this Court opted not to excuse the defendants' waiver of qualified immunity, the discovery plan provides that the defendants may still invoke the defense at trial. *See* Discovery Plan at 2. Because Sorano can not avoid facing the issue of qualified immunity at some point in the proceedings, she would suffer no prejudice at all from this Court reaching the merits here.

Accordingly, this Court holds that pursuant to the discovery plan, the defendants

have waived their right to resolve the issue of qualified immunity by motion prior to trial. In the interests of justice, however, the Court will excuse the defendants' waiver and reach the merits of the defense since Sorano will suffer no significant prejudice as a result.

### e. Qualified Immunity—The Merits

"A government official performing a discretionary function is entitled to qualified immunity provided his or her 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Natale v. Town of Ridgefield*, 927 F.2d 101, 104 (2d Cir.1991) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Essentially, "if it is objectively reasonable for an official to believe that he or she is acting within constitutional and statutory bounds, the official will be insulated from liability stemming from his or her conduct." *Natale*, 927 F.2d at 104–05.

### 1. Whether Sorano's Due Process Right to a Pre–Termination Hearing was Clearly Established at the Time of Taggart's Actions?

In determining whether a right was clearly established, the Second Circuit has instructed the district courts to consider three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991).

Taking these factors into consideration, Sorano's Due Process right to a pre-termination hearing was clearly established in the context of this particular case

at the time of Taggart's actions. First, it is beyond argument that Sorano has a constitutionally protected property interest in her continued employment. *See, e.g., Prue v. Hunt*, 78 N.Y.2d 364, 369, 575 N.Y.S.2d 806, 581 N.E.2d 1052 (1991) (holding that police officer had a constitutionally protected property interest in his continued employment and that Due Process required he "be given some pretermination opportunity to be heard"); *Eng v. New York City Police Department*, 977 F.Supp. 668, 672 (S.D.N.Y.1997) (holding that plaintiff—a police officer—"had a constitutionally protected property right in his position with the Department and was entitled to at least minimal procedural due process prior to dismissal"). "[P]ublic employees who can be discharged only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process." *Gilbert v. Homar*, 520 U.S. 924, 927–28, 117 S.Ct. 1807, 138 L.Ed.2d 120 (1997). Because, as a law enforcement officer, Sorano could not be terminated without just cause, she had a constitutionally protected property interest in her continued employment.

Furthermore, the Supreme Court has long held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). From this principle, it follows "that an individual [must] be given an opportunity for a hearing before he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971) (emphasis in original). As such, "some kind of a hear-

ing prior to the discharge of an employee who has a constitutionally protected property interest in his employment" is mandated by the Due Process Clause. *Loudermill*, 470 U.S. at 542, 105 S.Ct. 1487 (internal quotations omitted).

Based upon the decisional law of the Supreme Court, it is clear that an individual with a constitutionally protected property interest in his or her employment has a Due Process right to a pre-termination hearing. *See id.* Because Sorano, as a law enforcement officer, has a constitutionally protected property interest in her employment, there is no question but that her right to a pre-termination hearing was clearly established in the context of this particular case at the time of Taggart's actions.

## 2. Whether an Objectively Reasonable Official, Situated Similarly to Taggart, Would Have Believed that He was Acting Within Constitutional and Statutory Bounds?

 "Officials are not [held] liable for bad guesses in gray areas; they are [held] liable for transgressing bright lines." *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992). Thus, even if the rights at issue were clearly established, a public official may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991). Essentially, in order for the actions of a public official to be outside the scope of qualified immunity, the unlawfulness of the public official's actions must be readily apparent in light of pre-existing law. *See Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

 As noted above, it is beyond argument that Sorano's right to a pre-termination hearing was clearly established in the context of this particular case at the time of Taggart's actions. *See Prue*, 78 N.Y.2d at 369, 575 N.Y.S.2d 806, 581 N.E.2d 1052; *Eng*, 977 F.Supp. at 672. Additionally, it is well established that government actors are held to knowledge of decisional law. *See, e.g., Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir.1989) (prison officials held to knowledge of decisional law). Since the decisional law was clear that police officers have a constitutionally protected property interest in their continued employment, and that such a property interest may not be extinguished without a pre-termination hearing, it can not be said that Taggart acted reasonably by terminating Sorano's employment without providing a hearing. If anything, Taggart's failure to provide Sorano with a hearing "transgress[ed the] bright line" that required him to do so. *See Maciariello*, 973 F.2d at 298.

Further supporting the notion that Taggart is not entitled to qualified immunity is the case of *O'Neill v. Johnson*, No. 94–CV–1210, 1996 WL 650675 (N.D.N.Y. Nov. 5, 1996). In *O'Neill*, the plaintiff was hired as a permanent civil service police officer for the City of Schenectady, New York, *Id.* at *1. After taking numerous psychiatric leaves from the police department, the Mayor terminated the plaintiff's employment benefits without conducting a pre-termination hearing. *See id.* at *2. As a result, the plaintiff filed action against the Mayor in federal court under 42 U.S.C. § 1983. *Id.* at *3.

In holding that the Mayor was not entitled to qualified immunity, the district court held that at the time of the Mayor's actions the law was clearly established that police officers had a constitutionally protected property interest in their employment benefits, and that such benefits could not be terminated without conducting a pre-termination hearing. *Id.* at *10. On

this basis, the district court concluded "that it was not objectively reasonable for the [Mayor] to believe that [her] act of depriving the plaintiff of his [employment] benefits without a hearing was lawful." *Id.*

As the plaintiff in *O'Neill,* Sorano similarly has a constitutionally protected property interest in her continued employment. *See Prue,* 78 N.Y.2d at 369, 575 N.Y.S.2d 806, 581 N.E.2d 1052; *Eng,* 977 F.Supp. at 672. Additionally, Sorano was deprived of her property interest without the benefit of a pre-termination hearing. *See* Def.'s Statement ¶¶ 1–2; Pl.'s Resp. ¶¶ 1–2. Since the district court in *O'Neill* concluded that the Mayor acted objectively unreasonable by failing to provide the plaintiff with a pre-termination hearing, this Court similarly holds that Taggart also acted unreasonably by failing to provide Sorano with such a hearing.

Accordingly, the defendants' motion for summary judgment on the basis of qualified immunity is DENIED and Sorano's motion for summary judgment is GRANTED as to liability.

## III. CONCLUSION

In their motion for summary judgment, the defendants conflated the doctrine of collateral estoppel with the doctrine of *res judicata.* Furthermore, despite waiving the chance to raise the defense of qualified immunity by motion prior to trial, the Court excuses the defendants' waiver and reaches the merits of the defense because doing so imparts no significant prejudice upon Sorano. In reaching the merits, this Court holds that Taggart is not entitled to qualified immunity. Accordingly, the defendants' motion for summary judgment is DENIED.

Sorano, however, has established that the doctrine of collateral estoppel precludes the defendants from relitigating the issue of liability before this Court. As such, Sorano's motion for summary judgment is GRANTED as to liability.

SO ORDERED.