(April 17, 2012)

■ In the Matter of RICHARD VECCHIO, Petitioner, v RAYMOND W. KELLY et al., Respondents. [943 NYS2d 444]—

Determination of respondent Commissioner, dated September 5, 2008, which, upon findings of official misconduct and violations of the Police Department Patrol Guide, terminated petitioner's employment as a police officer, annulled, without costs, the petition granted to the extent of dismissing specifications 6 and 10 in case No. 81292/05, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Alice Schlesinger, J.], entered March 24, 2009) remanded for a determination of a new penalty on the remaining specifications.

The findings that petitioner committed the criminal offense of official misconduct and violated several provisions of the Patrol Guide by, among other things, improperly taking and possessing nude photos of an arrestee and a rape victim are supported by substantial evidence (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181-182 [1978]). There is no basis for disturbing the hearing officer's findings of credibility as to those charges (*Matter of Berenhaus v Ward*, 70 NY2d 436, 443-444 [1987]).

The finding that petitioner was guilty under specifications 6 and 10 of leaving work early on certain dates and falsifying business records in the second degree regarding those dates is not based on substantial evidence. The inference that on those days petitioner used the 592 E-Z Pass to travel from his assignment in Brooklyn to Staten Island Health Services, but did not return to work in Brooklyn, because the E-Z Pass was not used to return to Staten Island, where petitioner resided, was unduly speculative, given the plausible testimony that other family members also used the vehicle and the E-Z Pass during that time period. In light of our vacatur of this finding, the matter must be remitted to the Police Commissioner to redetermine the penalty to be imposed (*see Matter of Eng v Brown*, 196 AD2d 89, 96 [1994], *lv denied* 83 NY2d 758 [1994]).

If the Commissioner sees fit to adhere to the penalty of

termination, petitioner should be permitted to apply for a vested interest retirement. In so directing, we acknowledge that the Commissioner's penalty determination is deserving of due deference, but we are also mindful of the fact that we "cannot operate merely as a rubber stamp of the administrative determination 'if the measure of punishment or discipline imposed is so disproportionate to the offense, in the light of all of the circumstances, as to be shocking to one's sense of fairness' " (*Matter of McDougall v Scoppetta*, 76 AD3d 338, 341 [2010], *appeal withdrawn* 17 NY3d 902 [2011], quoting *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974], and citing, inter alia, *Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001]). In *McDougall*, the petitioner's isolated use of cocaine resulted in his termination. The Second Department, "recogniz[ing] that the petitioner committed a serious infraction which militates against his continued employment as a firefighter," remitted the matter to the respondents to impose the lesser penalty of a fine, while permitting the petitioner to retire as of the date of his now vacated termination so that he could collect his pension (76 AD3d at 342-343). In so doing, the court noted the devastating financial impact that loss of his pension would have on the petitioner's family, the isolated nature of the infraction, and the undisputed fact that the petitioner was otherwise an exemplary member of the Fire Department, considered to be a mentor and a role model.

Like the conduct of the firefighter in *McDougall*, petitioner's conduct, however unseemly, was an aberration from his otherwise exemplary career over approximately two decades. Before the proceedings at issue here, petitioner had never been subject to formal disciplinary charges, and indeed had earned a "highly competent" rating in his most recent performance review. He was the recipient of 12 medals for excellent police duty, one medal for meritorious police duty, and one commendation. Also similar to the situation in *McDougall* is the fact that termination would work an extreme hardship on petitioner's innocent family, three members of which are foster children whom petitioner and his wife adopted. *Matter of Harp v New York City Police Dept.* (277 AD2d 147 [2000], *revd* 96 NY2d 892 [2001]), cited by the dissent, is notably missing this last, critical, factor. We therefore disagree with the dissent that it is "far more on point" than *McDougall*. Under these circumstances, even in light of the repellent behavior exhibited by petitioner, the deprivation of his retirement benefits is shocking to one's sense of fairness (*see Matter of Pell*, 34 NY2d at 233). Concur—Mazzarelli, J.P., Moskowitz and Acosta, JJ.

Sweeny, J., dissents in part in a memorandum as follows: I agree with the majority that the Commissioner failed to establish by substantial evidence specifications 6 and 10 (leaving work early and falsifying business records). I also agree that the matter must be remanded for a determination of the appropriate penalty on the remaining specifications.

I must disagree, however, with the additional direction of the majority that, regardless of the penalty to be imposed, even if the Commissioner still sees fit to order termination, he must grant petitioner the right to apply for a vested interest retirement.

The law is clear that in our review of a penalty imposed by the Commissioner, we may not substitute our judgment for his but merely must determine whether that penalty is "so disproportionate to the offense as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 237 [1974]; *Matter of Kelly v Safir*, 96 NY2d 32, 38 [2001]).

The majority's reliance on *Matter of McDougall v Scoppetta* (76 AD3d 338 [2010], *appeal withdrawn* 17 NY3d 902 [2011]), a Second Department case, is misplaced. There, the petitioner engaged in one instance of taking cocaine. Here, petitioner, at different times engaged in taking nude photographs of a rape victim. He also compelled a young female suspect brought to the station for a minor motor vehicle matter to allow him to photograph her naked breast, falsely claiming it was in case she was brought in on later charges.

Certainly, a case far more on point is *Matter of Harp v New York City Police Dept.* (96 NY2d 892 [2001], *revg* 277 AD2d 147 [2000]). There, petitioner NYPD officer was found guilty after a disciplinary hearing of making false or misleading statements during an internal investigation interview. He was dismissed and his pension rights forfeited. We upheld the guilty finding, but found that the penalty was disproportionate to the misconduct and thus shocked the judicial conscience. Citing petitioner's record of 15 years' excellent service with no prior disciplinary record and his "Exceeds Standards" ratings, as well as the fact that "the false statements given by petitioner here were of relatively minor significance," we found the penalty "a shockingly excessive sanction here" (277 AD2d at 148). The Court of Appeals reversed, holding that "[a]n administrative penalty must be upheld unless it 'is so disproportionate to the offense as to be shocking to one's sense of fairness', thus constituting an abuse of discretion as a matter of law . . . Under the

circumstance of this case, it cannot be concluded that, as a matter of law, 'the penalty of dismissal imposed by the Commissioner shocks the judicial conscience' " (*Matter of Harp*, 96 NY2d at 894, quoting *Matter of Kelly v Safir*, 96 NY2d 32, 39-40 [2001]).

The majority cannot question that the Commissioner engaged in anything other than a careful review of this case, including the effect the penalty would have on petitioner. Supporting the Commissioner's determination on the record before us is hardly the "rubber stamp" the majority so cavalierly refers to; it is, by the constraints of the limited review afforded us, whether we agree with it or not, completely supported by the record.