Matter of Arroyo v O'Neill (2019 NY Slip Op 06568)





Matter of Arroyo v O'Neill


2019 NY Slip Op 06568


Decided on September 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019

Acosta, P.J., Richter, Kapnick, Kahn, Kern, JJ.


9527 101125/17

[*1]In re Richard Arroyo, Petitioner,
v
James P. O'Neill, etc., et al., Respondents.


Worth Longworth & London, LLP, New York (Howard B. Sterinbach of counsel), for petitioner.
Zachary W. Carter, Corporation Counsel, New York (Lorenzo Di Silvio of counsel), for respondents.



Determination of respondent Police Commissioner, dated May 4, 2017, which, after a hearing, terminated petitioner's employment as a New York City police officer, modified, on the law, to vacate the penalty of dismissal and forfeiture of his retirement benefits, and the proceeding brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Carmen Victoria St. George, J.], entered June 13, 2018), remanded to respondents for determination of a lesser penalty, and the determination otherwise confirmed, without costs.
Petitioner admitted at trial to the theft of $20 from an undercover officer illegally parked near a hydrant and acting intoxicated in the course of an integrity test targeting petitioner's partner. Substantial evidence supports the finding that he also made false statements in the course of an official investigation, in violation of Patrol Guide § 203-08 (see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). There exists no basis to disturb the credibility determinations of the Hearing Officer (see Matter of Berenhaus v Ward, 70 NY2d 436, 443-444 [1987]).
However, under the circumstances presented here, the penalty of termination and forfeiture of his pension shocks our conscience and sense of fairness (see Matter of Vecchio v Kelly, 94 AD3d, 545, 546 [1st Dept 2012], lv denied 20 NY3d 855 [2013]; Matter of McDougall v Scoppetta, 76 AD3d 338 [2d Dept 2010], appeal withdrawn 17 NY3d 902 [2011]). Petitioner's conduct, although troubling, was an aberration from his otherwise exemplary career. Petitioner has nearly two decades of police service, prior to which he served in the United States Army for eight years where he was a sergeant in the military police, receiving an honorable discharge. During his tenure with the New York City Police Department, petitioner had no formal disciplinary history, and received a total of 38 medals for "Excellent Police Duty" and "Meritorious Police Duty." Moreover, the loss of petitioner's pension would work a financial hardship on his wife, who is diagnosed with cancer, and their now 10-year-old daughter (see Matter of Vecchio, 94 AD3d at 546 [noting that the extreme financial hardship upon the family of the petitioner caused by the loss of a pension was a critical factor in determining whether the deprivation of retirement benefits is shocking to one's sense of fairness, a factor which was notably missing in Matter of Harp v New York City Police Dept. (277 AD2d 147 [1st Dept 2000], revd 96 NY2d 892 [2001])]).
The question of whether the penalty is so disproportionate to the misconduct as to shock the conscience requires a case by case factual analysis. While certainly cognizant of the Court of Appeals' jurisprudence set forth in Matter of Pell v Board of Educ. (34 NY2d 222 [1974]), and recently reaffirmed in Matter of Bolt v New York City Dept. of Educ. (30 NY3d 1065 [2018]), we nonetheless find under the circumstances presented herein that the penalty of dismissal and the deprivation of petitioner's right to his accrued pension are an "affront to our sense of fairness" and "shock[s] the conscience" (id. at 1069, Rivera, J., concurring).
All concur except Richter and Kern, JJ. who dissent in part in a memorandum by Richter, J. as follows:




RICHTER, J. (dissenting in part)


I agree with the majority that substantial evidence supports the finding that petitioner made false statements during an official investigation. However, I would confirm respondent Police Commissioner's decision to terminate petitioner's employment as a New York City police officer. In view of petitioner's on-duty theft of money and his subsequent false statements, both of which are offenses involving moral turpitude, the penalty of termination is not so disproportionate to the offense as to shock one's sense of fairness.
Respondent Police Department of the City of New York (NYPD) issued charges and specifications against petitioner Police Officer Richard Arroyo alleging that he (1) failed an integrity test when he took $20 from the car of an individual he thought was a civilian; and (2) made false and misleading statements about the incident during an official NYPD interview. Arroyo pleaded guilty to the first charge, and proceeded to a departmental trial on the second.
The evidence at the trial established the following. NYPD's Internal Affairs Bureau (IAB) conducted an integrity test whereby an undercover officer acted intoxicated while parked illegally near a fire hydrant [FN1]. NYPD introduced a video of the incident into evidence that clearly depicts the theft. The video shows Arroyo going into the vehicle, taking $55 from the center console, taking a $20 bill and putting it into his left hand, while counting out the remaining $35 and grabbing that with his right hand. After Arroyo took the money, a recording device worn by the undercover recorded Arroyo outside the vehicle counting out $35, not $55. Arroyo was subsequently interviewed by IAB, during which he maintained that he did not count the money inside the vehicle, he gave back all the money he recovered to the owner, and that he never took any money that did not belong to him.
The trial commissioner found Arroyo guilty of the theft charge, based on his guilty plea, and guilty of the false statements charge based on the trial evidence. The trial commissioner concluded that Arroyo had falsely stated at the department interview that he never counted or separated the money inside the car, and only counted it outside the vehicle in the presence of the motorist and other officers. The trial commissioner explained that Arroyo thereby created a false description of events. As a penalty, the trial commissioner recommended that Arroyo be dismissed from the NYPD. The Police Commissioner subsequently approved the findings of guilt on both charges, as well as the penalty of dismissal, and this article 78 proceeding ensued.
It is well settled that an administrative penalty must be upheld unless it is "so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (Matter of Pell v Board of Educ., 34 NY2d 222, 233 [1974]). In matters of police discipline, the determination of the Police Commissioner as to the appropriate punishment must be given "great leeway" because "it is the Commissioner, not the courts, who is accountable to the public for the integrity of the Department" (Matter of Kelly v Safir, 96 NY2d 32, 38 [2001] [internal quotation marks omitted]). The Appellate Division has no interest of justice jurisdiction in reviewing the Commissioner's penalty (id.), and, as recently emphasized by the Court of Appeals, "That reasonable minds might disagree over what the proper penalty should have been does not provide a basis for . . . refashioning the penalty" (Matter of Bolt v New York City Dept. of Educ., 30 NY3d 1065, 1068 [2018]).
Applying these principles, the penalty of dismissal is not so disproportionate to the offenses committed here as to shock one's sense of fairness. Police officers hold a vital position of public trust, and must be held to the highest standards of honesty and integrity. Officers are tasked with ensuring the safety and well-being of all members of the public, including those who are intoxicated like the undercover here appeared to be. Officers are also entrusted to safeguard, [*2]and properly voucher in appropriate circumstances, any money and evidence they come upon in their official capacity. They are also expected to tell the truth, particularly because they are often called on to testify under oath at criminal trials and other proceedings.
Here, Arroyo was found guilty of two very serious offenses, steeped in dishonesty, that violated the trust the public places in police officers. Both his on-duty theft of money from an individual he believed was an intoxicated civilian, and his subsequent false statements creating a false narrative of the incident to cover his tracks, are offenses of great moral turpitude that have a "destructive impact" "on the confidence which it is so important for the public to have in its police officers" (Matter of Alfieri v Murphy, 38 NY2d 976, 977 [1976]).
The Court of Appeals and this Court have repeatedly upheld the penalty of termination for police officers engaging in the type of corrupt behavior engaged in here. For instance, in Alfieri, the Court confirmed a termination penalty in the case of a 15-year veteran of the police department who was charged with shoplifting $4.17. The Court described the officer's theft as a "grave" offense, stating that "[t]he smallness of the value of the property [stolen] does not diminish the moral turpitude thus disclosed" (id.; see also Pell, 34 NY2d at 234-235 [describing larceny of even small sums of money as "morally grave"]; Brovakos v Bratton, 254 AD2d 32 [1st Dept 1998] [upholding the discharge of an officer who wrongfully solicited money and failed to voucher it]).
In Matter of Harp v New York City Police Dept. (277 AD2d 147 [1st Dept 2000], revd 96 NY2d 892 [2001]), this Court vacated the penalty of dismissal for a police officer who, like Arroyo, made false or misleading statements at an internal investigation interview. Despite the fact that the officer in Harp had 15 years of excellent police service with no prior disciplinary record, and that the false statements made were "of relatively minor significance" (277 AD2d at 148), the Court of Appeals reversed, finding that the penalty did not, as a matter of law, shock the judicial conscience (96 NY2d at 894). The misconduct here — larceny and false statements made to cover up that crime — far exceeds that of the officer in Harp. Subsequent to Harp, this Court has repeatedly declined to set aside termination penalties for police officers who make false statements (see e.g. Matter of Smith v Kelly, 117 AD3d 564, 565 [1st Dept 2014] [lying to federal agents]; Matter of Alvarez v Kelly, 2 AD3d 219 [1st Dept 2003] [false statements made in departmental interview]), even where the falsities were made off duty (see Matter of Kim v Kelly, 104 AD3d 556 [1st Dept 2013] [making false statements in a mortgage application]).
In vacating the penalty of termination, the majority focuses on Arroyo's lengthy and exemplary career and lack of disciplinary history. In view of the seriousness of Arroyo's misconduct, neither of these factors is sufficient to set aside the Commissioner's decision. Indeed, the Court of Appeals has repeatedly upheld harsh penalties, including termination from employment, for employees with no prior disciplinary record (see e.g. Matter of Ward v City of New York, 23 NY3d 1046, 1047 [2014] [revoking master plumbing license despite unblemished record]; Kelly v Safir, 96 NY2d at 39-40 [confirming penalty of dismissal despite prior exemplary service and commendations]).
Nor does the loss of pension benefits that automatically flows from Arroyo's dismissal warrant a different result. As the Court of Appeals explained in Pell, "Pensions are not only compensation for services rendered, but they serve also as a reward for faithfulness to duty and honesty of performance" (Pell, 34 NY2d at 238). Pell recognized that the length of employment, loss of retirement benefits, and the effect on an innocent family can all play a role in a court's review of a penalty, but "only in cases where there is absent grave moral turpitude and grave injury to the agency involved or to the public weal" (id. at 235). The matter before us, however, is not such a case. Although the forfeiture of the pension will undoubtedly result in hardship for Arroyo, in view of the serious nature of the misconduct, it cannot be said that the penalty imposed shocks the conscience (Pell, 34 NY2d at 239; see Harp, 96 NY2d at 894; Kelly v Safir, 96 NY2d at 39-40; Matter of Durudogan v City of New York, 134 AD3d 452, 452 [1st Dept 2015] [confirming the dismissal of a police officer and thereby denying him vested retirement benefits]).
In vacating the penalty, the majority relies upon Matter of Vecchio v Kelly (94 AD3d 545, 546 [1st Dept 2012], lv denied 20 NY3d 855 [2013]). In that case, which came down before the [*3]Court of Appeals's cautionary reminder in Bolt, the petitioner police officer was terminated based on, inter alia, charges relating to his improperly taking and possessing nude photographs of an arrestee and a rape victim. The Court sustained those charges, dismissed other unrelated charges, annulled the penalty of termination, and remanded the matter for imposition of a new penalty on the remaining charges. The Court also directed that if the Commissioner still saw fit to adhere to the penalty of termination, the petitioner should be permitted to apply for a vested interest retirement. I believe that Vecchio cannot be reconciled with the Court of Appeals' jurisprudence set forth herein, most recently reaffirmed by Bolt. Accordingly, I would confirm the Police Commissioner's determination in its entirety, deny Arroyo's article 78 petition and dismiss the proceeding.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 17, 2019
CLERK



Footnotes

Footnote 1: An integrity test places a police officer in a lifelike scenario to ascertain whether the officer would act in accordance with the law and NYPD policies.